UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| STEVEN McKENNEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 5:24-CV-261-REW-MAS ) ) |
| KROGER LIMITED PARTNERSHIP I, *et al.*, | ) OPINION & ORDER ) ) |
| Defendants. | ) ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Steven McKenney alleges that, on September 10, 2023, he slipped and fell while shopping at a grocery store owned by Kroger Limited Partnership I ("Kroger") and located in Georgetown, Kentucky. *See* DE 1-1 ¶¶ 16–20, at 4–5. After his fall, McKenney brought two lawsuits against a number of parties. *See id.* ¶¶ 3–12, at 3–4; DE 1 ¶¶ 1–2, at 1–2. His lawsuits have since been consolidated, and some of the parties dismissed. DE 21 at 3–4, 8–14. The remaining defendants include Kroger, Sedgwick Claims Management Services, Inc. ("Sedgwick"), and Kewanza Spivey. *See* DE 1-1 ¶¶ 3–12, at 3–4. Sedgwick is Kroger's claims manager, and Spivey is a current employee at Sedgwick. *See id.*

Before the Court is McKenney's "Motion for Leave to File First Amended Complaint." *See* DE 28. McKenney seeks to add as a defendant Michael Hirz, a former manager at Kroger's Georgetown store who was working at the time of the fall. *See id.* at 1. Kroger and Sedgwick (collectively, "Defendants") filed a response in opposition to the amendment. *See* DE 31. McKenney filed a timely reply. *See* DE 39. Defendants, with the Court's permission, *see* DE 41, then filed a sur-reply. *See* DE 42. Having reviewed the record, the Court determines that

McKenney should not be permitted to amend his Complaint. As a result, the Court DENIES with prejudice DE 28.

I. **BACKGROUND**

While the facts underpinning this dispute are relatively simple, the procedural history is exceedingly complex. On September 10, 2023, McKenney entered a grocery store owned and operated by Kroger in Georgetown, Kentucky. *See* DE 1-1 ¶¶ 16–20, at 4–5. McKenney alleges that, on that date, he slipped and fell while shopping at the store and sustained serious injuries, "including multiple tears to his shoulder, elbow[,] and bicep." *See id.* ¶¶ 16–18, at 4–5. On July 8, 2024, McKenney filed a lawsuit in the Scott County Circuit Court. *See id.* at 1; DE 1 at 1. Kroger, Sedgwick, Spivey, Mike Borders, and Terry Hall were all named as defendants in that filing. *See* DE 1 ¶ 1, at 1–2. McKenney alleged that these latter two were the managers operating the store at the time of his fall. *See id.* However, after it came to light, post-removal, that neither Borders nor Hall had worked at the store for some years prior to McKenney's fall,[1] it became apparent that the two had been fraudulently joined. *See id.* Because the citizenship of a fraudulently joined party is disregarded under 28 U.S.C. § 1332, none of the other defendants were domiciled in Kentucky, and the amount in controversy exceeded $75,000, the matter was properly removed. *See id.*

Back to the start: Only two days after removal, McKenney filed a nearly identical lawsuit in the Scott County Circuit Court. *See generally* DE 1-1. Kroger, Sedgwick, Spivey, Joe Ignacio, Jared Stover, and three unidentified individuals were all named as defendants in that second suit. *See id.* McKenney alleged that Ignacio, Stover, and the three unidentified individuals were "for-profit partnerships, partners, corporations and/or managers engaged in owning, operating and/or

---

[1] Indeed, it seems that Borders passed away in 2015. *See* DE 1 ¶ 1, at 1–2.

2

managing a retail grocery food chain and convenience stores or outlets, and conducting other business in the Commonwealth of Kentucky." *See id.* ¶ 9, at 3. But once again, it turned out that neither Ignacio nor Stover worked for Kroger at the time of the incident. *See* DE 1 ¶ 10, at 3. And once again, the matter was properly removed. *See* DE 21 at 8–14. Prior to removal, the Scott Circuit Court had granted Defendants' motion for a 14-day extension to serve their responses to McKenney's interrogatories and requests for production of documents. *See* DE 42 at 4–5.

About one week later, Kroger and Sedgwick filed a motion to dismiss McKenney's first set of claims on account of the rule against splitting causes of action. *See* DE 7. Soon after, McKenney filed motions to remand, consolidate, stay, and join/substitute parties. *See* DE 10; DE 11. He also filed similar motions in the first, parallel action. *See* No. 5:24-CV-236 at DE 12; *Id.* at DE 13. The Court addressed the torrent of motions in a single Order, ultimately: consolidating both actions under the current case number; denying McKenney's motions to join or substitute parties; denying McKenney's motions to remand; dismissing Borders, Hall, Ignacio, and Stover as fraudulently joined; denying Kroger and Sedgwick's motion to dismiss as moot; denying McKenney's motions to stay proceedings; and ordering Kroger to supplement its jurisdictional allegations (which it later did, *see* DE 22). DE 21 at 15.

Each party has now filed an additional motion. Sedgwick, on behalf of itself and Spivey, has filed a motion for partial summary judgment. *See* DE 25. Meanwhile, McKenney has—about one month after learning from Defendants that Hirz was the on-duty manager at the time of his fall—filed the instant motion for leave to file his first amended Complaint. *See* DE 28. In his motion, McKenney argues that justice requires the Court to permit him to add Hirz to the Complaint. *See id.* at 15. Defendants responded in opposition, *see* DE 31, and McKenney timely replied, *see* DE 39. In reply, McKenney argues for the first time that his claims against Hirz are

3

not futile, as the equitable tolling doctrine or equitable estoppel applies to prevent the applicable statute of limitations from barring his claims. *See id.* at 10–14. He also argues for the first time that he is entitled to amend and join Hirz as a party because the proposed amendment relates back to the initial pleading. *See id.* at 14–15. Defendants filed a sur-reply with permission of the Court. *See* DE 42. The matter is now ripe for review.

## II.   LEGAL STANDARD

As relevant, before trial, "a party may amend its pleading once as a matter of course," so long as they do so within "21 days after serving it." FED. R. CIV. P. 15(a). Once that deadline has passed, a party may only amend its pleading "with the opposing party's written consent or the court's leave." *Id.* Courts, however, are instructed to "freely give leave when justice so requires." *Id.*; *accord Foman v. Davis*, 83 S. Ct. 227, 230 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). While the Sixth Circuit has recognized that this "rule embodies a 'liberal amendment policy,'" denial may still "be appropriate when there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002); *Foman*, 83 S. Ct. at 230).

Relying on this statement of law, and particular to the § 1447(e) context involving a post-removal joinder that would oust jurisdiction, the Sixth Circuit has endorsed a four-factor test for evaluating whether a party should be permitted to amend its pleading. *See Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 221 (6th Cir. 2016). Under this test, courts must consider "(1) the extent to which the proposed amendment's intent was to

4

destroy federal jurisdiction, (2) whether the plaintiff was dilatory in filing the motion to amend, (3) whether the plaintiff would be significantly injured if the motion to amend were denied, and (4) any other equitable factors." *Id.* (citing *Bailey v. Bayer CropScience, L.P.*, 563 F.3d 302, 309 (8th Cir. 2009); *Mayes v. Rapoport*, 198 F.3d 457, 462–63 (4th Cir. 1999)); *see also Madden v. Berea Healthcare, Inc.*, No. 5:23-CV-223, 2023 WL 8654369, at *3 (E.D. Ky. Dec. 14, 2023) (citing *Rader v. Principle Long Term Care, Inc.*, No. 5:19-CV-487, 2020 WL 4758255, at *4 (E.D. Ky. Aug. 14, 2020)).

But even beyond this four-factor test, "[a] court need not grant leave to amend . . . where amendment would be 'futile.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman*, 83 S. Ct. at 230). The Sixth Circuit has previously held that an "[a]mendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss" for failure to state a claim under Rule 12(b)(6). *Id.* (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)). In instances where a "proposed amended complaint's allegations demonstrate on their face that that the statute of limitations bars the claims that the amendment asserts," it would be impossible to survive a 12(b)(6) motion and leave to amend may be denied as futile. *Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495, 500 (6th Cir. 2015) (citing *500 Assocs., Inc. v. Vt. Am. Corp.*, 496 F. App'x 589, 593 (6th Cir. 2012); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1104 (6th Cir. 1995)).[2]

---

[2] A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *See Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 435 (6th Cir. 2017). Kentucky courts apply the "any significant contacts" test in tort actions. *See Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). Pursuant to that test, "any significant contact with Kentucky [i]s sufficient to allow Kentucky law to be applied." *Id.* (quoting *Bonnlander v. Leader Nat'l Ins.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996)). Because McKenney was injured in Kentucky, and is currently domiciled in Kentucky, the "any significant contacts" test is assuredly met. *Cf. Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 145 n.8 (Ky. 2009) (applying Kentucky law because plaintiff was domiciled in Kentucky and his injuries arose out of the defendant's contacts with Kentucky). As a result, Kentucky law applies and will determine the relevant limitations periods.

Rule 15(c) addresses the sub-issue of relation back. An amendment to change a party or naming of a party against whom a claim is asserted relates back to the date of original filing when (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," and (2) "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment . . . received such notice of the action that it will not be prejudiced in defending on the merits[,] and . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Id.* Generally, this method of amending a pleading is used "to correct a misnomer or misdescription of a proper party plaintiff already in court." *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 319 (6th Cir. 2010). It may not be used to "circumvent the statute of limitations, adding new parties and new claims." *Id.*

### III. ANALYSIS

#### A. The Balancing Test Weighs Against McKenney

Three of the four factors in the governing balancing test weigh strongly against permitting McKenney to add Hirz as a defendant. Accordingly, the Court, in its discretion under Rule 15 and § 1447(e), concludes that justice does not require granting McKenney's motion for leave to amend.

#### 1. Purpose to Defeat Federal Jurisdiction

When the apparent purpose of an amendment is to defeat federal jurisdiction, that characteristic cuts against allowing amendment. *See, e.g.*, *Telecom Decision Makers*, 654 F. App'x at 221. In this instance, the totality of the record indicates that McKenney primarily seeks to amend to add a non-diverse defendant and defeat federal jurisdiction, forcing this Court to remand the matter back to state court. For that reason, this factor counsels against amendment.

Defendants correctly state that a party's intent to defeat federal jurisdiction can often be inferred from the case's procedural history. *See* DE 31 at 4 (citing *Simpson v. BLC Lexington SNF, LLC*, No. 5:22-CV-136, 2022 WL 15044819, at *2–3 (E.D. Ky. Oct. 26, 2022); *Cooper v. Thames Healthcare Grp., LLC*, No. 3:13-CV-14, 2014 WL 941925, at *4 (E.D. Ky. Mar. 11, 2014); *Lawson v. Lowe's Home Ctrs., LLC*, No. 5:13-CV-374, 2015 WL 65117, at *4 (E.D. Ky. Jan. 5, 2015)). And here, the procedural history strongly suggests that McKenney primarily seeks to add Hirz for the impact on jurisdiction. In his initial state-court lawsuit, McKenney raised claims against two non-diverse individuals he alleged to be Kroger managers. After it became clear that neither one was working as a manager at the time of his fall—and after the matter was removed to federal court—McKenney filed a nearly identical state-court action raising claims against two *different* non-diverse individuals he again claimed to be Kroger managers. When he later discovered that neither one of *those* two was likely a manager at the time of his fall, and that case was also removed, he filed a motion to join/substitute parties and to remand the matter to state court. *See* DE 10. In that motion, McKenney generally sought to join the correct, yet unidentified, Kroger managers who, if added, would theoretically destroy diversity jurisdiction. *See id.* at 10–13. It seems McKenney's primary motivation is avoiding, at all costs, a federal forum.

McKenney does offer something of a rebuttal. He argues that his case is analogous to *Rader*, 2020 WL 4758255, at *2–3, because just as the plaintiff there had tried and failed to name the correct nursing home administrator, McKenney has tried and failed to name the proper store manager. But this case is distinguishable from *Rader*. In *Rader*, the plaintiff made a single mistake, despite reasonable and good-faith efforts to identify the correct administrator. *See id.* at *2. Here, McKenney has already named four (woefully) incorrect store managers across two separate lawsuits, and even attempted to add the nameless, general concept of a "Kroger manager"

7

in his prior motion to join/substitute parties. This conduct does not reflect legitimate efforts to name the proper party, but rather, haphazard attempts to name *any* Kentucky-domiciled party to defeat the Court's diversity jurisdiction.

And to some degree, McKenney's own statements reveal his true motivations. In his response to Sedgwick's motion for summary judgment, he urged the Court to delay ruling on that motion until it has ruled on this one, explaining that if the Court granted him leave to amend, "the parties may no longer be diverse and the matter may be remanded to the Scott Circuit Court." DE 29 at 2. That statement, particularly in light of the tortured course narrated through DE 21, is the functional equivalent of "filing a motion to amend to add non-diverse parties" at the same time as "a motion to remand," a move that "indicate[s] a strong motive to intentionally destroy federal diversity jurisdiction." *Simpson*, 2022 WL 15044819, at *2; *see also Cooper*, 2014 WL 941925, at *4 (denying leave to amend, in part, because the party "filed the motion to amend less than a month after removal and simultaneously with its motion to remand, which was based solely on the joinder of a [non-diverse defendant]").

As a whole, this case is more analogous to *Simpson* than *Rader*. McKenney accurately distinguishes *Simpson* on the basis that the plaintiff in that case named "John Does" as defendants and made no effort to discover their identities. *See* 2022 WL 15044819, at *2. In contrast, McKenney named Borders, Hall, Ignacio, and Stover in his two lawsuits—all individuals alleged to be on-duty managers at the time of his fall. But that distinction is superficial. McKenney, based on the inaccuracies, performed little to no reliable research before naming those purported Kroger managers; none of them worked for Kroger when the incident occurred, and one apparently died in 2015. What McKenney accomplished was little more than naming "John Does" by other names.

8

Moreover, McKenney has not adequately explained why he was unable to identify the on-duty managers before either of his suits was removed. He attributes his failures to Defendants' delay tactics, but Defendants evidently complied with the rules of discovery, and it cannot be said that their requested 14-day extension to respond to McKenney's interrogatories and document requests (court approved, no less) was unreasonable. And of course, the fall here occurred in September 2023; no suit (thus, no mechanism for forcing discovery) arose until July 2024. It is not on Kroger to facilitate litigation against it. Overall, the record indicates that McKenney's purpose in seeking to amend the Complaint is to defeat federal jurisdiction, something paramount in McKenney's strategy through the entire pleadings history.

### 2. Dilatoriness

If a litigant is dilatory in seeking to amend a pleading, that fact will weigh against granting leave. *See, e.g.*, *Simpson*, 2022 WL 15044819, at *3. While McKenney seeks leave to amend his Complaint long after the initial filing, the reason for delay is largely attributable to Defendants' conduct and various discovery-related setbacks. Accordingly, this factor is either neutral or leans slightly in favor of granting McKenney's motion for leave.

In assessing dilatoriness, courts generally consider the total time that has elapsed between the initial filing and the motion for leave to amend. *See id.* Courts have found delays as short as four months, *see Graves v. Standard Ins.*, 2015 WL 2453156, at *6 (W.D. Ky. May 22, 2015) (citing *G & C Land v. Farmland Mgmt. Servs.*, 587 F. App'x 99, 103 (5th Cir. 2014)), two months, *see Wells v. Certainteed Corp.*, 950 F. Supp. 200, 201 (E.D. Mich. 1997), and even three weeks, *see Johnson v. Pharmacia & Upjohn Co.*, No. 4:99-CV-96, 1999 WL 1005653, at *1 (W.D. Mich. Oct. 12, 1999), to be dilatory. Far exceeding those periods, McKenney filed his motion for leave

9

approximately one year after filing the initial Complaint. *See* DE 1-1; DE 28. However, certain unique considerations excuse this delay.

As recognized in *Bridgepointe Condos., Inc. v. Integra Bank Nat'l Ass'n*, No. 08-475-C, 2009 WL 700056, at *3 (W.D. Ky. Mar. 13, 2009), longer periods of delay may be excusable when they result from delays in discovery. In *Bridgepointe*, the court found that the plaintiffs were "[c]learly . . . not dilatory" where only two weeks had passed since the deposition that revealed facts supporting the amendment, even though four months had elapsed since the initial filing. *Id.* Similarly, McKenney acted within a reasonable time after finally learning Hirz's identity as manager, filing the motion for leave roughly one month after "Defendants provided the incident report filled out by Manager Michael Hirz . . . and answered interrogatories identifying him" as the on-duty manager at the time of the fall.[3] DE 28 at 10. To be sure, a delay approaching an entire year is substantial, regardless of which party bears responsibility. McKenney—who, after all, interacted with Hirz and knew the full facts and scope of his claim from the date of the fall— waited ten months before initiating suit. But nevertheless, the facts here are sufficient to conclude that McKenney was not dilatory, as an amendment factor, in seeking leave to amend his Complaint.

### 3. Prejudice

When a litigant would be "significantly injured" by a court's denial of leave to amend, this factor indicates proper amendment. *Telecom Decision Makers*, 654 F. App'x at 221. Here, however, because McKenney can recover in full from existing Defendants (Kroger in particular) he will not be prejudiced, certainly not significantly, by amendment denial.

---

[3] As referenced above, there are some cases in which a delay of less than one month has been found to be dilatory, *see, e.g.*, *Johnson*, 1999 WL 1005653, at *1, and other cases in which such a delay has been found to be permissible, *see, e.g.*, *Colletti v. Menard, Inc.*, No. 14-CV-13538, 2015 WL 404356, at *4 (E.D. Mich. Jan. 29, 2015). The ambiguity in this authority is another reason that this factor does not *strongly* weigh in McKenney's favor.

Courts consistently hold that plaintiffs suffer no substantial prejudice when denied leave to amend and add a defendant if they can "obtain full relief without joining [the new defendant] to [the] action." *Cooper*, 2014 WL 941925, at *4; *see also Blohm v. CMH Holmes, Inc.*, No. 0:24-CV-57, 2024 WL 5104477, at *3 (E.D. Ky. Oct. 18, 2024); *Davis v. Owners Ins.*, 29 F. Supp. 3d 938, 944 (E.D. Ky. 2014). In the instant matter, McKenney (who, unconventionally, states in the First Amended Complaint that he offered to settle all claims "for $200,000," *see* DE 28-1 ¶ 14, at 4) can plainly obtain full relief from Kroger. All of his negligence claims against Hirz "are based on conduct occurring in the course and scope of [his] employment" as a manager at Kroger. *See Cooper*, 2014 WL 941925, at *4. Moreover, it is uncontested that "[u]nder the doctrine of respondeat superior, an employer can be held vicariously liable for an employee's tortious actions if committed in the scope of his or her employment." *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (quoting *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008)). Hirz's absence from this litigation will not impede McKenney's recovery.

McKenney raises two counterarguments. First, he asserts that he may pursue a manager-liability claim against Hirz, per the Kentucky Supreme Court's byzantine decision in *Grubb v. Smith*, 523 S.W.3d 409 (Ky. 2017). *See* DE 28 at 12. Because "an agent of a corporation is personally liable for a tort committed by him although he was acting for the corporation," McKenney contends he must be permitted to add Hirz as a defendant. *See id.* (quoting *Peters v. Frey*, 429 S.W.2d 847, 849 (Ky. 1968)). But McKenney misunderstands the Court's task. The relevant inquiry is not whether Hirz could face some independent liability. Rather, it is whether an already-named defendant—here, Kroger—would be held liable for Hirz's allegedly negligent acts.[4] *See Cooper*, 2014 WL 941925, at *4 ("[W]hile [the plaintiff] might have colorable claims

---

[4] Although McKenney cites *Clark v. Lowe's Home Centers., LLC*, No. 6:19-CV-114, 2019 WL 5092941 (E.D. Ky. Oct. 11, 2019), in his reply for the proposition that Hirz's independent liability warrants joinder

11

against [the defendant to be added], it may obtain full relief without joining her to this action."). The answer to that question is, assuredly, yes. This spares McKenney prejudice from declined joinder.

Second, McKenney argues that even if he can already recover in full, he should still be permitted to add Hirz because he is the "master of the [C]omplaint." *See* DE 28 at 13 (quoting *Lincoln Prop. Co. v. Roche*, 126 S. Ct. 606, 614 (2005)). This argument is unavailing. McKenney was indeed the master of the Complaint and could have properly included Hirz or another on-duty manager when he initially filed it. But the fact that he controls that pleading does not entitle him to amend it at will. If that were so, the requirements of Rule 15(a) would exist without meaning, and § 1447(e) would contain peremptory language. For these reasons, the Court concludes that McKenney would not be significantly injured if denied leave to amend his Complaint and add Hirz as a defendant. Kroger is solvent and will answer for anything chargeable to its employees in this case. The low-impact denial of a pleading prerogative, something held by Plaintiff at the litigation gate but necessarily compromised over the passage of time, does not qualify as significant prejudice.

---

and subsequent remand, *see* DE 39 at 8–9, that case arose in a different context. In *Clark*, the undersigned dealt with a claim of fraudulent joinder. 2019 WL 5092941, at *1. In such cases, "the removing party must show that there is 'no colorable basis for predicting that a plaintiff may recover against [that defendant].'" *Id.* (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (internal quotation omitted)). "If the plaintiff has even a 'glimmer of hope,' then any charge of fraudulent joinder fails and the Court must remand the case to state court for want of subject-matter jurisdiction." *Id.* (quoting *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (internal citation omitted)). By contrast, when a plaintiff seeks to make a post-removal amendment to their pleading, courts in this district, implementing § 1447(e), focus at this step on whether complete relief is already available from the existing defendants, not on whether independent liability is feasible. *See, e.g.*, *Cooper*, 2014 WL 941925, at *4; *Simpson*, 2022 WL 15044819, at *3 ("Here, plaintiffs can obtain full recovery without joining the individual employees, and thus will not suffer substantial prejudice if the Court denies the amendment. . . . This holds true even when the plaintiff could seek to impose individual liability against the employee." (internal citations omitted)). As a result, McKenney's reliance on *Clark* is overstated.

#### 4. Equitable Considerations

In evaluating whether to grant leave to amend a pleading, courts may consider the principles of equity. *See Telecom Decision Makers*, 654 F. App'x at 221. After evaluating the relevant equitable considerations, the Court concludes that this factor counsels against granting McKenney's motion.

Other jurists have recognized that late, diversity-destroying amendments waste judicial resources and undermine a defendant's "substantial interest in proceeding in a federal forum." *Simpson*, 2022 WL 15044819, at *3 (quoting *Bridgepointe*, 2009 WL 700056, at *3). In this case, there is no sound reason why Defendants—after investing a year litigating this matter in federal court—should now be compelled to start anew in state court. As in *Simpson*, Defendants "properly removed this action to this Court based on diversity jurisdiction and have a substantial interest in proceeding here." *Id.* And, as in *Simpson*, little if any benefit would be served by inconveniencing a new defendant, Hirz, and haling him into court at this stage. *See id.* (citing *Barnett v. MV Transp., Inc.*, No. 3:14-CV-250, 2014 WL 1831151, at *2 (W.D. Ky. May 8, 2014)).

McKenney contends that Defendants' discovery delays are a relevant equitable consideration. *See* DE 28 at 14. But while it is true that equity does not reward procedural gamesmanship, that same principle applies with equal force to McKenney's *own* tactics, temporal approach, and transparent forum-shopping. On balance, the most equitable outcome is to maintain this litigation in this Court, where it has been for the past year.

### B. McKenney's Claims Against Hirz Are Futile

Even disregarding the preceding analysis, the Court is still unwilling to grant McKenney's motion for leave because, under Kentucky law, his claims against Hirz are time barred.[5] In

---

[5] It also bears mentioning that McKenney's equitable tolling and equitable estoppel arguments addressed here in Part III.B, along with his relation back argument addressed in Part III.C, were really argued for the

13

instances where an amendment seeks to add a claim that is barred by an applicable statute of limitations, leave to amend may be properly denied as futile. *Clark*, 617 F. App'x at 500; *see also Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 461 (S.D. Ohio 2021) ("[The proposed plaintiffs'] claims for unpaid overtime and untimely payment are time barred. And where a proposed amended claim is barred by the applicable statute of limitations, such a claim is futile." (citing *Home Quarters Real Estate Grp., LLC v. Mich. Data Exch., Inc.*, No. 2:07-CV-12090, 2010 WL 11545057, at *2 (E.D. Mich. June 28, 2010))). Under Kentucky law, "[a]n action for an injury to the person of the plaintiff" must be brought within one year. *See* KY. REV. STAT. ANN. § 413.140(1)(a) (West 2019). Yet more than two years have passed since McKenney's fall. *See* DE 1-1 ¶¶ 16–20, at 4–5.

In rebuttal, McKenney argues that he is nonetheless entitled to bring his claims against Hirz pursuant to the equitable tolling and equitable estoppel doctrines. On the equitable tolling argument, McKenney claims that, since filing his suit, "he has been pursuing his rights diligently, and . . . some extraordinary circumstance stood in his way and prevented timely filing"; as a result, his non-compliance with the statute of limitations should be excused. *Williams v. Hawkins*, 594 S.W.3d 189, 196 (Ky. 2020) (quoting *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 755 (2016)). McKenney bears the burden of establishing equitable tolling. *See id.* at 194 (citing *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005)).

But McKenney has not carried his burden. McKenney knew the primary defendant from day one, and presumably, he also knew from day one that the manager was not identified. Yet he waited ten months to file suit and then sought a fast track, and the papers in the summary judgment briefing indicate that McKenney had counsel as early as January of 2024. This does not support

---

first time in the reply. *See* DE 39 at 10–15. Nevertheless, the Court will consider these arguments, particularly because Defendants were given an opportunity to provide a response. *See* DE 41.

14

that McKenney has been pursuing his rights diligently or that some extraordinary circumstance stood in the way of him identifying and naming Hirz in his initial Complaint. To be sure, McKenney sought to add Hirz relatively soon after Defendants disclosed his identity. But nothing prevented McKenney from filing *much* earlier (and as a result, learning Hirz's identity much earlier) or conducting his own independent investigation to identify Hirz and add him at a prior stage in the proceedings. *See Ratliff v. Oney*, 735 S.W.2d 338, 341 (Ky. Ct. App. 1987) ("It is incumbent upon a plaintiff, when he institutes a judicial proceeding, to name the proper party defendant."). There is nothing extraordinary about encountering uncooperativeness or lack of volunteerism in helping a plaintiff sue an entity's employees.

On the equitable estoppel argument, McKenney claims that the only reason he was unable to bring his claims within the statutory limitations period is that Defendants delayed in providing Hirz's identity. *See* DE 39 at 10–14. But the doctrine of equitable estoppel only applies when the opposing party engaged in "conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert." *Williams*, 594 S.W.3d at 196 (quoting *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010)).[6] Once again, McKenney bears the burden of making this showing. *See Michigan Exp., Inc. v. United* States, 374 F.3d 424, 427 (6th Cir. 2004) (contrasting the burden of proof for making an equitable estoppel argument against the government and the burden for making an equitable estoppel argument against a more traditional defendant, but noting the plaintiff bears the burden in both instances).

---

[6] This is one of only several requirements under Kentucky law, but it is unnecessary to consider the others, as McKenney so clearly falters at this initial hurdle. *See Williams*, 594 S.W.3d at 196 (quoting *Fluke Corp.*, 306 S.W.3d at 62)

15

Here, despite McKenney's contentions to the contrary, the record does not indicate that Defendants falsely represented or concealed material facts.

McKenney argues that Defendants "refused to provide . . . the incident report or the identity of the manager at issue," *see* DE 39 at 10–11, but that assertion is overstated. Defendants, it seems to the Court, followed the rules of discovery and complied with all pertinent judicial orders. That is the extent of their obligations. The fact that Defendants did not immediately offer up Hirz's identity is not misconduct in and of itself, and it is certainly not akin to the kind of "false representation" or "fraudulent concealment" that justifies equitable estoppel. *Williams*, 594 S.W.3d at 196 (quoting *Munday v. Mayfair Diagnostic Lab'y*, 831 S.W.2d 912, 914 (Ky. 1992)).

In sum, because neither the doctrine of equitable tolling nor the doctrine of equitable estoppel applies—and because the applicable statute of limitations has already expired—McKenney's claims against Hirz would not survive a motion to dismiss under Rule 12(b)(6), and his amendment is alternatively denied as futile.

### C. McKenney's Proposed Amendment Does Not Relate Back

As a last resort, McKenney argues that the amendment to add Hirz as a defendant would relate back to the initial pleading under Rule 15(c). *See* DE 39 at 14–15. McKenney's proposed amendment certainly meets one of Rule 15(c)'s requirements; that is, he does "assert[] a claim . . . that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." FED. R. CIV. P. 15(c)(1)(B)–(C). But it fails to meet the Rule's remaining requirements, and McKenney's assertions to the contrary fail.

Nothing in the record indicates that Hirz received timely notice of the suit within the 90-day period prescribed by Rule 4(m). *See* FED. R. CIV. P. 4(m). This, in itself, is a fatal flaw. The record shows Hirz was already gone from Kroger by the time of the initial suit. Other than Hirz's

16

historical connection to Kroger, McKenney points to nothing indicating Hirz had notice of the suit in the 90-day window from July to October 2024. McKenney recently had the chance to depose Hirz and could have probed for such proof, but, in the Court's review, he did not. *See* DE 34-3. Rule 15(c)(1)(C)(i)–(ii) requires notice in two categories, and McKenney does not approach satisfaction of either.

Thus, McKenney has not established that Hirz knew, or reasonably should have known, that—but for a mistake in his identity—McKenney's action would have named him. *See Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2494–96 (2010). Of course, McKenney *attempted* to name Kroger managers in both of his lawsuits. But those attempts did not put Hirz, who retired from Kroger on July 1, 2024, before McKenney initiated either of those actions, on actual or constructive notice. And even if Hirz *had* maintained an employment relationship with Kroger, that fact alone would not be sufficient to establish actual or constructive notice. *See Force v. City of Memphis*, No. 95-6333, 1996 WL 665609, at *2–3 (6th Cir. Nov. 14, 1996) (citing *Berndt v. Tennessee*, 796 F.2d 879 (6th Cir. 1986)) (affirming district court's denial of relation back argument, in part, because despite an existing employment relationship and a lawsuit against the city, the newly-named police officers lacked sufficient notice).

Moreover, the Sixth Circuit draws a firm line between "a plaintiff's mistake concerning the identity of a party from a plaintiff's mere failure to find out a party's identity." *Ham v. Sterling Emergency Servs. of the Midwest, Inc.*, 575 F. App'x 610, 616–17 (6th Cir. 2014) (citing *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996)). Only the former category satisfies the commands of Rule 15(c)(1)(C). However, for myriad reasons already detailed in this opinion, this case plainly falls in the latter category. McKenney did not truly misidentify or misname Hirz; he simply failed to discover his identity. Further, and as the Sixth Circuit has stated categorically, the rule does not

17

allow relation back of an amendment adding a new party. *See Asher*, 596 F.3d at 319 ("[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991))). In short, McKenney's proposed amendment does not relate back to his initial Complaint, and he may not add Hirz as a defendant under Rule 15(c).

### IV.   CONCLUSION

Consistent with the above analysis, the Court DENIES DE 28, with prejudice.

This the 6th day of November, 2025.

Signed By:
*Robert E. Wier*   REW
United States District Judge