UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

STEVEN McKENNEY,                )
                                )
        Plaintiff,              )        No. 5:24-CV-261-REW-MAS
                                )
v.                              )
                                )        OPINION & ORDER
KROGER LIMITED PARTNERSHIP I, *et*      )
*al.*,                          )
                                )
        Defendants.             )

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Steven McKenney alleges that, on September 10, 2023, he slipped and fell while shopping at a grocery store owned and operated by Kroger Limited Partnership I ("Kroger") in Georgetown, Kentucky. *See* DE 1-1 ¶¶ 16–20, at 4–5. Following the incident, McKenney filed two lawsuits against a number of parties. *See id.* ¶¶ 3–12, at 3–4. In a prior Order, the Court consolidated these lawsuits and dismissed several defendants. *See* DE 21 at 3–4, 8–14. The remaining defendants are Kroger, Sedgwick Claims Management Services, Inc. ("Sedgwick"), and Kewanza Spivey. *See* DE 1-1 ¶¶ 3–12, at 3–4. Sedgwick is Kroger's claims manager, and Spivey is a current employee at Sedgwick. *See id.* There is no proof of service as to Spivey, and she is not before the Court.

Before the Court is Sedgwick's Motion for Summary Judgment on Count V of the Complaint, which asserts claims against both Sedgwick and Spivey. *See* DE 25. In Count V, McKenney alleges that Sedgwick and Spivey: (1) acted in "bad faith"; (2) violated the Kentucky Unfair Claims Settlement Practices Act ("UCSPA");[1] (3) were negligent in their handling of

---

[1] In his Complaint, McKenney incorrectly refers to this statute as the "Kentucky Uniform Settlement Practices Act." DE 1-1 at 7.

McKenney's claim, and for Sedgwick in particular, in the hiring, training, retention, and supervision of Spivey and other insurance adjusters; and (4) acted with gross negligence or recklessness in connection with those same duties.  *See* DE 1-1 at ¶¶ 35–57, at 7–10.

Because no genuine dispute of material fact exists as to the bad-faith and UCSPA claims, and because McKenney cannot prevail on those theories as a matter of law, summary judgment is appropriate.  Moreover, because McKenney has not pleaded facts sufficient to sustain his negligence and gross negligence theories—and even if he had, he would not be entitled to recover on those theories as a matter of law—summary judgment is likewise appropriate as to those claims. Accordingly, the Court GRANTS Sedgwick's motion for summary judgment as to the entirety of Count V and DISMISSES all claims against both Sedgwick and Spivey, with prejudice.

## I.    BACKGROUND

On September 10, 2023, McKenney entered a Kroger grocery store located in Georgetown, Kentucky.  *See* DE 1-1 ¶¶ 16–20, at 4–5.  McKenney alleges that, on that date, he slipped and fell while shopping at the store and sustained serious injuries, "including multiple tears to his shoulder, elbow[,] and bicep."  *See id.* ¶¶ 16–18, at 4–5.  On July 8, 2024, McKenney filed a lawsuit in the Scott County Circuit Court.  *See id.* at 1; DE 1 at 1.  After that action was removed, he filed a second, nearly identical lawsuit in the Scott County Circuit Court, which was also removed.  *See id.* ¶ 2, at 2.  Soon after, the Court consolidated both lawsuits, *see* DE 21 at 3–4, dismissed several defendants, *see id.* at 8–14, and, most recently, denied McKenney's motion for leave to amend the Complaint and add a defendant, *see* DE 54 at 18.

McKenney maintains a range of claims against Kroger, Sedgwick, and Spivey, who are collectively the three remaining defendants.  *See generally* DE 1-1.  Regarding both Sedgwick and Spivey, McKenney alleges that the defendants have acted in "bad faith," have violated their

obligations under the UCSPA, and "have been negligent and/or grossly negligent/reckless in the actions and/or inactions" in failing to offer him a settlement or review his claim materials. *See id.* at ¶¶ 35–57, at 7–10; DE 29 at 5 n.4. With respect to Sedgwick in particular, he argues that it was "negligent and/or grossly negligent/reckless . . . in the hiring, training, retaining, and supervising of . . . Spivey" and its other insurance adjusters. *See* DE 1-1 ¶ 53, at 9; DE 34 at 10–11. He also argues that Sedgwick and Spivey were engaged in a joint venture, apparently framing that relationship as a separate cause of action. *See* DE 1-1 at ¶¶ 35–39, at 7.

Sedgwick, backed by an affidavit, asserts that Kroger is a self-insured entity, *see* DE 25 at 2, that Sedgwick is Kroger's third-party claims administrator, *see id.*, and that Spivey was employed at Sedgwick and worked on McKenney's claim, *see id.* Sedgwick also states that Spivey has not yet been served or appeared, *see id.* at 2 n.1, though McKenney notes that he "attempted service on . . . Spivey by serving the Kentucky Secretary of State for service upon her, and such service is typically effective upon service on the [Secretary of State]," *see* DE 29 at 3 n.2 (citing KY. REV. STAT. ANN. § 454.210(3)(c)). McKenney offers no proof of that, and nothing in the record substantiates that Spivey is properly before the Court. McKenney's deadline to effect service under Rule 4(m) has long passed.

Recently, Sedgwick filed the instant motion for summary judgment. *See* DE 25. In its motion, Sedgwick argues that McKenney cannot prevail on his claims against either Sedgwick or Spivey as a matter of law, in large part because Sedgwick is not engaged in the business of insurance—a prerequisite for bad-faith actions and UCSPA liability under Kentucky law. *See id.* at 1. As a result, Sedgwick requests the Court to dismiss Count V of the Complaint with prejudice. *See id.* at 1. McKenney responded in opposition to Sedgwick's motion, arguing that Sedgwick *is* engaged in the business of insurance under Kentucky law, *see* DE 29 at 7–11, Sedgwick has not

adequately combatted his negligence and gross negligence claims in Count V of the Complaint, *see id.* at 11–15, and relief cannot be accorded to Spivey because she is not presently before the Court, *see id.* at 2–3. McKenney was also granted leave, *see* DE 38, to file a supplemental response after learning from Michael Hirz, one of Kroger's managers, that Sedgwick supplies retraining materials after slip-and-fall incidents, and likely provided such materials after McKenney's fall, *see* DE 34 at 6–7. Sedgwick filed a reply shortly after. *See* DE 45. Having received all of the filings, the matter is ripe for decision.

## II.  LEGAL STANDARD

Summary judgment is appropriate when the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a)–(c). In determining whether there exists a genuine dispute of material fact, the Court must consider all facts and draw all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the Court may not "weigh the evidence [or] determine the truth of the matter" in evaluating whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986). If the moving party satisfies its burden, the burden shifts to the non-moving party to produce "specific facts" that suggest a "genuine issue" for trial. *See id.* at 2553. Notably, this is "an affirmative duty to direct the Court's attention to those specific portions of the record upon which [the non-moving party] seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). If the non-moving party cannot make a showing sufficient to establish the existence of an

essential element of their case, then "Rule 56(c) mandates the entry of summary judgment." *Celotex*, 106 S. Ct. at 2552.

A fact is "material" when the substantive law that underlies the dispute identifies it as such. *See Anderson*, 106 S. Ct. at 2510. That is, "disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" when "there is sufficient evidence favoring the [non-moving] party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 88 S. Ct. 1575, 1592 (1968)). Sitting in diversity jurisdiction, the Court must look to federal law to resolve procedural issues, and Kentucky law to resolve substantive ones.[2] *Hanna v. Plumer*, 85 S. Ct. 1136, 1141 (1965); *Erie R.R. Co. v. Tompkins*, 58 S. Ct. 817, 822 (1938).

As a final note, summary judgment is also proper when the non-moving party's pleading fails to state a claim upon which relief can be granted. *See Carter v. Ford Motor Co.*, 561 F.3d 562, 567 (6th Cir. 2009). Although the analysis of a pleading's sufficiency at the summary-judgment stage resembles the analysis of a Rule 12(b)(6) motion, the two inquiries are not identical. *See id.* at 567–68. Generally, by the time that a party moves for summary judgment, the liberal federal discovery rules have brought "the gravamen of the dispute . . . frankly into the

---

[2] While not in dispute, it is worth stating for completeness why Kentucky law is the applicable substantive law in this matter. A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *See Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 435 (6th Cir. 2017). Kentucky courts apply the "any significant contacts" test in tort actions. *See Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009). Pursuant to that test, "any significant contact with Kentucky [i]s sufficient to allow Kentucky law to be applied." *Id.* (quoting *Bonnlander v. Leader Nat'l Ins.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996)). Because McKenney was allegedly injured in a Kroger store located in Kentucky and is currently domiciled in Kentucky, the "any significant contacts" test is assuredly met. *Cf. Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 145 n.8 (Ky. 2009) (applying Kentucky law because the plaintiff was domiciled in Kentucky and his injuries arose out of the defendant's contacts with Kentucky). As a result, the Court applies Kentucky law.

open for inspection by the court." *See id.* at 568 (quoting *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 789 (6th Cir. 2005)).  Accordingly, courts need not apply the more flexible plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–69 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009), when assessing the legal sufficiency of a claim at the summary-judgment stage.  Instead, if the undisputed facts show that the plaintiff cannot establish a viable legal claim, summary judgment is warranted.  *Cf. Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004) ("Because no discovery has been conducted yet, we do not know the full contours of the suspension.  For now, . . . we find that Smith has sufficiently alleged an adverse employment action.").

### III.    ANALYSIS

#### A.  Ripeness of Motion

McKenney argues that Sedgwick's motion is not ripe, as only limited discovery has been conducted on his Count V claims.[3]  *See* DE 29 at 4.  Discovery may not be complete, but that does not necessarily imply that summary judgment is premature.  As of now, there are sufficient facts in the record to support Sedgwick's claims that Kroger is self-insured and that Sedgwick is Kroger's third-party claims adjuster.  *See* DE 25-1.  Nothing contradicts the asserted status of Kroger or its non-insurance relationship with Sedgwick.  Moreover, the mere fact that McKenney wants *additional* proof as to both of these claims is not enough.  *See* DE 29 at 4–7.  Unless McKenney can produce some affirmative evidence to refute the evidence already offered by the

---

[3] McKenney also argues that the Court should delay ruling on Sedgwick's motion until after it rules on his motion for leave to file an amended pleading.  *See* DE 25 at 1–2.  He claims that his amendment will likely result in this case being remanded to state court and notes that "it is prudent to allow the better suited authorities to adjudicate the viability of [his] claims."  *See id.* at 2 (quoting *Rader v. Principle Long Term Care*, No. 5:19-CV-487, 2020 WL 4758255, at *2 (E.D. Ky. Aug. 14, 2020)).  The Court heeded McKenney's recommendation, in a sense, and decided his motion first.  *See* DE 54.  This eliminates the sequence concern.

movant (such that a jury could return a verdict in his favor), he has not created a genuine dispute of material fact. *See Anderson*, 106 S. Ct. at 2511 (citing *First Nat'l Bank*, 88 S. Ct. at 1592); *see also Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 482 (Ky. 1991).[4]

There are only two remaining questions at this time. First, may Sedgwick and Spivey—as third-party administrators for a self-insured entity—be held liable in bad-faith and UCSPA actions brought under Kentucky law? And second, can McKenney sustain his negligence and gross negligence claims against Sedgwick and Spivey under Kentucky law? It is unclear what purpose additional discovery would serve with respect to either of these essentially legal questions. As such, the Court concludes that this motion is ripe for review.

### B. Summary Judgment as to Sedgwick

Sedgwick seeks summary judgment as to Count V of the Complaint. *See* DE 25 at 6. In that Count, McKenney raises four claims applicable to both Sedgwick and Spivey: (1) a bad-faith claim; (2) a UCSPA claim; (3) a negligence claim; and (4) a gross negligence claim. After applying two separate analytical frameworks, the Court concludes that summary judgment is proper with respect to all four claims. And while McKenney also attempts to raise what he terms a "joint venture" claim in Count V, *see* DE 1-1 ¶¶ 35–39, at 7, Sedgwick is correct in asserting that a "joint venture" is a legal relationship and not an actionable independent claim that need be

---

[4] In his first response, McKenney's attorney filed an affidavit in support of delaying a decision, asserting that "[d]iscovery has just begun in this case, discovery is ongoing, and additional discovery is necessary regarding the Plaintiff's claims asserted against" both Sedgwick and Spivey. *See* DE 29-2 ¶ 2, at 1. Pursuant to Rule 56(d), summary judgment is not proper when "a [non-movant] shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). However, nothing here indicates that McKenney cannot present such facts. McKenney does not contest Kroger or Sedgwick's basic statuses; rather, he indicates a desire to fish through underlying discovery. He does not put into contention the essential relationship between the parties—that Kroger is self-insured, and that Sedgwick is simply a third-party administrator for Kroger's self-insured apparatus. Further, given McKenney's failure to effectively bring Spivey into court, his claim for needed discovery rings hollow.

addressed by the Court, *see* DE 45 at 12–13; *Roethke v. Sanger*, 68 S.W.3d 353, 364 (Ky. 2001) (defining joint enterprise).

### 1. Claims Adjuster Liability—Bad Faith and the UCSPA

Having established that there is no genuine dispute of material fact as to Kroger's status as a self-insured entity or as to Sedgwick's status as a third-party claims adjuster, the question now is whether McKenney—under Kentucky law—may recover against a third-party claims adjuster on bad faith and UCSPA claims. Finding that Kentucky courts have expressly precluded liability in circumstances such as this one, the Court determines that summary judgment is proper with respect to both claims.

To prevail on his bad-faith and UCSPA claims, McKenney must show that Sedgwick was obligated to pay under the terms of a policy, that Sedgwick lacked a reasonable basis for denying his claim, and that Sedgwick knew there was no reasonable basis for denying his claim or acted with reckless disregard as to that fact. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). But there is another, more foundational prerequisite. The Kentucky Supreme Court has recognized, in no uncertain terms, that a person or entity cannot be held liable under either the tort of bad faith or the UCSPA unless they are "engaged in the business of insurance." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 95 (Ky. 2000). In that same decision, the Court reaffirmed its long-standing position that a "self-insured" person or entity is not "engaged in the business of insurance." *See id.* at 99 (citing *Reeves v. Wright & Taylor*, 220 S.W.2d 1007, 1010 (Ky. 1951)). Without some "contractual obligation, there is simply no [bad-faith] cause of action either at common law or by statute." *Id.* at 100. These conclusions are unambiguous and dispositive.[5]

---

[5] In another unambiguous statement, the Kentucky Supreme Court clarified that the standard for evaluating a bad-faith claim is identical to the standard for evaluating a claim under the UCSPA. *See Davidson*, 25 S.W.3d at 100 ("Writing for a unanimous Court . . . , Justice Leibson gathered all of the [bad-faith] liability theories under one roof and established a test applicable to all [bad-faith] actions.").

While *Davidson* forecloses bad-faith and UCSPA liability for Kroger, McKenney argues that it does not similarly foreclose liability for Sedgwick or, by extension, Spivey. *See* DE 29 at 7–11. In effect, McKenney asserts that Kentucky law is at least ambiguous as to whether a third-party claims administrator can be held liable under a bad-faith cause of action. *See id.* at 9–10. He heavily relies on *Gibson v. American Mining Insurance Co.*, No. 08-CV-118, 2008 WL 4602747, at *8 (E.D. Ky. Oct. 16, 2008), which observed: "While no Kentucky appellate court case has directly addressed whether claims adjusters can be held liable for bad faith claims in the wake of *Davidson*, there are analogous cases that arguably lend support to each side." On this question, *Davidson* is at least "open to different interpretations," and according to McKenney, that ambiguity is sufficient to preclude summary judgment. *Howard v. Allstate Vehicle & Prop. Ins.*, No. 7:19-CV-16, 2019 WL 1951443, at *3 (E.D. Ky. May 2, 2019); *see also Brown v. Indem. Ins. Co. of N. Am.*, No. 17-CV-193, 2017 WL 3015171, at *2 (E.D. Ky. July 14, 2017) ("[T]he courts of Kentucky have yet to clearly determine whether claims under the USCPA can be asserted against claims adjusters . . . .").

But McKenney's argument is fatally flawed, as *Gibson* is critically distinct from the present matter. The *Gibson* court determined that two third-party claims adjusters had not been fraudulently joined because there was at least a "colorable basis" for the plaintiffs' bad-faith and UCSPA claims against them. 2008 WL 4602747, at *4–6. In reaching that conclusion, *Gibson* relied on *Quality Signs & Service, Inc. v. Westfield Cos.*, No. 02-CI-1396, 2004 WL 1047914, at *4–5 (Ky. Cir. Ct. Feb. 16, 2004), a Kentucky decision following *Davidson* and permitting similar claims to proceed under comparable circumstances. 2008 WL 4602747, at *8. Although the *Quality Signs* defendants appealed that decision, the Kentucky Court of Appeals affirmed in an

unpublished opinion. *See Westfield Cos. v. Quality Signs & Serv., Inc.*, No. 2004-CA-557, 2005 WL 791363 (Ky. Ct. App. Apr. 8, 2005).

However, those cases involved third-party claims adjusters working on behalf of entities that were indisputably in the business of insurance. *Gibson*, 2008 WL 4602747, at *1; *Quality Signs*, 2004 WL 1047914, at *4–5 (detailing policy purchase and risk-pool arrangement). In contrast, Sedgwick is being sued for work performed on behalf of Kroger, a self-insured entity. This is an essential distinction, as both *Gibson* and *Quality Signs* turned on the following statement of law: "[T]he UCSPA and the tort of 'bad faith' apply only to those persons or entities **(and their agents)** who are 'engaged . . . in the business of entering into contracts of insurance.'" *Gibson*, 2008 WL 4602747, at *7 (quoting *Davidson*, 25 S.W.3d at 102) (emphasis in original); *see also Quality Signs*, 2004 WL 1047914, at *5.[6]

To be clear, *Gibson* and *Quality Signs* only came out the way they did because there was a plausible argument that the third-party claims adjusters were acting as agents for entities in the business of insurance. Per the explicit language of the Kentucky Supreme Court, Kroger—a self-insured entity—is not in the business of insurance. *Davidson*, 25 S.W.3d at 102. As a result, Sedgwick itself cannot possibly be an *agent* for an entity engaged in the business of insurance.[7]

---

[6] In his supplemental response, McKenney points out "that Sedgwick also receives Kroger incident reports, investigates, and it 'direct[s],' supervises, reviews, and orders retraining at the Kroger store at issue, including for the fall at issue, and it is thus subject to liability for these additional reasons that were undisclosed until [manager Michael Hirz's] deposition." DE 34 at 5. However, even if this were an accurate statement of Sedgwick's role, the assertions would do nothing to change the fact that Kroger is a self-insured entity not in the business of insurance, and therefore, would not change Sedgwick's lack of bad-faith and UCSPA liability.

[7] Sedgwick further relies on *Breedlove v. State Farm Fire & Casualty Co.*, 690 S.W.3d 904, 914–15 (Ky. Ct. App. 2024), arguing that the case resolved the long-standing split between the Eastern District of Kentucky and the Western District of Kentucky as to whether adjusters can be held liable for bad-faith and UCSPA claims, deciding in favor of the Western District and determining they could not be. *See* DE 45 at 9. Sedgwick's characterization of *Breedlove* is accurate, though the Kentucky Court of Appeals cannot bind the Court in the same manner as the Kentucky Supreme Court. *Cf. Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997) ("[W]hile lacking the controlling force of a decision of a state court of last resort,

As a last-ditch effort, McKenney asks the Court to reinvent Kentucky law, asserting "that given the opportunity, . . . the Kentucky Supreme Court would today rule . . . that Sedgwick is subject to all Kentucky laws that any other insurance person, entity, or agent would be subject." DE 29 at 8. But seeing no grounds in support of McKenney's conclusory assertion, and respecting the status of *Davidson* and the many Kentucky decisions sorting its meaning, the Court declines any request to vary or to certify a question on what seems a patent analysis. The parties and relationships here implicate no insurance contract—not one in favor of McKenney, not one covering Kroger, and not one obligating Sedgwick. Kroger's (and Sedgwick's) reactions to McKenney's claims simply do not transform them into entities engaged in the business of insurance, and the bad-faith rubric applicable to such entities does not pertain.

### 2. Claims Adjuster Liability—Negligence and Gross Negligence

Sedgwick also asks the Court to grant summary judgment on McKenney's negligence and gross negligence claims raised in Count V of his Complaint. *See* DE 25 at 6; DE 45 at 10–12. Because McKenney did not specifically allege the elements of a negligence or gross negligence claim in Count V, and because Sedgwick did not, as a fundamental matter, owe a duty of care to McKenney, the Court agrees with Sedgwick. As such, the Court grants summary judgment on both claims.

As an initial matter, McKenney has not adequately pleaded a negligence or gross negligence cause of action in Count V of his Complaint. It is well established that a plaintiff must

---

does serve as 'a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' We may refuse to follow intermediate appellate court decisions where we are persuaded that they fail to reflect state law correctly, but 'we should not reject a state rule just because it was not announced by the highest court of the state,' even if we believe that the rule is 'unsound.'" (quoting *Ziebart Int'l Corp. v. CNA Ins.*, 78 F.3d 245, 250 (6th Cir. 1996))). *Breedlove* strongly indicates that Kentucky would not extend bad-faith exposure to adjusters of insurance companies.

include in the complaint "either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Bell Atl. Corp.*, 127 S. Ct. at 1969). But McKenney only states in Count V that Sedgwick and Spivey "have been negligent and/or grossly negligent/reckless in the actions and/or inactions and in failing to follow their policies and procedures and in the hiring, training, retaining, and supervising of Defendant Spivey and/or any other agent or adjuster tasked with handling this claim and making a reasonable offer of settlement." DE 1-1 ¶ 53, at 9. Nowhere in that jumbled passage does McKenney state whether Sedgwick owed him a duty, whether Sedgwick breached that duty, or whether Sedgwick's negligent or grossly negligent conduct caused him injury, all of which are essential elements of his claims. *See Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003) (citing *Mullins v. Commonwealth Life Ins.*, 839 S.W.2d 245, 247 (Ky. 1992)). That, alone, is sufficient to warrant summary judgment.

But on a more fundamental level, McKenney cannot—as a matter of law—succeed against Sedgwick on his negligence and gross negligence claims. As noted above, "[i]f no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Pathways*, 113 S.W.3d at 89 (quoting *Ashcraft v. Peoples Liberty Bank & Tr. Co.*, 724 S.W.2d 228, 229 (Ky. Ct. App. 1986)). Thus, unless McKenney can establish that Sedgwick owed him some statutory or common-law duty, there is no way that he can recover from Sedgwick in a negligence or gross negligence action. *See id.* Moreover, the above analysis already forecloses recovery under the common-law tort of bad faith and under the UCSPA—some alternative theory will be necessary.

McKenney points to no alternative theory. While McKenney has attempted to find support for his assertions that Sedgwick was negligent in handling his claim and negligent in their employment of Spivey, another decision in the Eastern District of Kentucky has already foreclosed liability in such a scenario. In *Kelch-Dyson v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 5:21-CV-08, 2021 WL 1383227, at *6–7 (E.D. Ky. Apr. 12, 2021), McKenney's counsel sued Kroger, Sedgwick, and one of Sedgwick's employees on behalf of Susan Kelch-Dyson, who slipped and fell while shopping at a grocery store owned and operated by Kroger in Lexington, Kentucky. *See id.* at *1. That lawsuit raised the same baseless "joint enterprise," negligence, and gross negligence claims against Sedgwick and its employee on account of their "handling of [the plaintiff's] claim against Kroger," and with respect to Sedgwick in particular, on account of its supposed "fail[ure] to properly hire, train, retain, and supervise" its employees.[8] *See id.* at *6–7.

In *Kelch-Dyson*, the court determined that there was no such thing as a "joint enterprise" claim, *see id.* at *7, that the plaintiff had failed to plead the elements of any negligence cause of action, *see id.* at *6, and most importantly to the present analysis, that Sedgwick and its employees owed no duty to the plaintiff due to the lack of any "contractual obligation to pay" the plaintiff, and therefore, could not be negligent for their handling of the plaintiff's claim, *see id.* The Court has already reached identical conclusions on these first two issues. Now, it reaches an identical conclusion on the third issue. Sedgwick and its employees lack any contractual obligation to pay McKenney, and accordingly, cannot logically owe him a duty with respect to their handling of his claim. *See Raney v. Life Ins. Co. of N.A.*, No. 5:08-CV-169, 2008 WL 11344701, at *2 (E.D. Ky.

---

[8] The plaintiff in *Kelch-Dyson* also made a claim based on Sedgwick's and one of its employee's "fail[ure] to follow their policies and procedures." *See* 2021 WL 1383227, at *6. McKenney raises the same claim here. *See* DE 1-1 ¶ 53, at 9. However, the same fact that foreclosed liability when *Kelch-Dyson* was decided forecloses liability here: "Kentucky does not appear to recognize a cause of action for 'failure to follow policies and procedures.'" 2021 WL 1383227, at *6.

13

July 3, 2008) ("[O]bligations of a contract are limited to the parties thereto and cannot be imposed on a stranger to the contract." (quoting *Kovacs v. Freeman*, 957 S.W.2d 251, 256 (Ky. 1997))).

And although Kentucky law "does recognize the torts of negligent hiring, training, supervision, and retention," *see Kelch-Dyson*, 2021 WL 1383227, at *6 (citing *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 336 n.10 (Ky. 2014)), McKenney does not allege facts that would establish Sedgwick's liability on such a claim. This is a narrow cause of action, requiring proof that: "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed[;] and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Id.* (quoting *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009)). While McKenney argues that Sedgwick *could* be held liable on such a claim, his argument is necessarily premised on the notion that Spivey herself was negligent or caused him some degree of harm. But, again, given the absence of a duty source, and as addressed below, Spivey was not negligent in her handling of McKenney's claim for the very same reasons that Sedgwick was not. Because Spivey did not herself cause McKenney any cognizable harm, it cannot be said that Sedgwick is liable to McKenney for its hiring, training, supervision, or retention of Spivey.

Now, it is necessary to address two final arguments raised in McKenney's supplemental response. First, during Michael Hirz's (the on-duty manager at the time of McKenney's fall) deposition testimony, McKenney learned "that Sedgwick also receives Kroger incident reports, investigates, and it 'direct[s],' supervises, reviews, and orders retraining at the Kroger store at issue, including for the fall at issue." DE 34 at 5. McKenney asserts that these roles subject Sedgwick to liability under "[t]he so-called 'undertaker's doctrine.'" *See id.* at 9 (quoting

14

*Louisville Gas & Elec. Co. v. Roberson*, 212 S.W.3d 107 (Ky. 2006)).  But they do not, for several reasons.

In *Roberson*, the Kentucky Supreme Court concluded that the defendant company could be held liable for failing to maintain a streetlight that it had installed for public safety purposes. *See* 212 S.W.3d at 111–12.  In doing so, the court explicitly relied on the Restatement (Second) of Torts § 324A, which reads in full that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Regardless of how McKenney tries to frame Sedgwick's efforts to prevent slip-and-fall incidents, Sedgwick's conduct does not amount to an undertaking within the meaning of this provision.  During his deposition, Hirz only stated that Sedgwick sends accident-prevention emails to Kroger after incidents occur at the store.  *See* DE 34-3 at 58–60.  Kroger managers then "print off [the] appropriate retraining documents" and review those documents "with the associates within that department."  *See id.* at 60.  Simply put, this does not amount to "render[ing] services to another which . . . [are] necessary for the protection of a third person."  Restatement (Second) of Torts § 324A.  Nor has McKenney provided law suggesting anything to the contrary.  *See* DE 34 at 8–9.  As a result, the Court concludes that the minor steps Sedgwick regularly takes after slip-and-fall incidents does not constitute an "undertaking" under § 324A.

Second, McKenney fancifully asserts that Sedgwick is "directly liable for the negligent hiring, training, supervision, and retention" of Kroger employees because "Kroger and its employees are clearly overseen by and are agents and servants of Sedgwick."  *Id.* at 10 (citing

*Carr v. Lake Cumberland Reg'l Hosp.*, No. 6:15-CV-138, 2017 WL 4978124 (E.D. Ky. Oct. 31, 2017)). But McKenney cannot establish an agency relationship between Sedgwick (Kroger's retained third-party administrator) and Kroger and/or its employees sufficient to extend liability. Under Kentucky law, the most critical element in determining whether an agency relationship exists is "the extent of control which, by the agreement, the [principal] may exercise over the details of the work." *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 212 (Ky. Ct. App. 2008) (quoting *Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755, 756 (Ky. 1955)).[9] McKenney scarcely approaches this mark, and really is just throwing Hail Marys in an effort to keep Sedgwick in the case. Sedgwick only sends emails to Kroger managers, triggered by a Kroger report, reminding them to share materials with their employees and conduct incident-specific retraining. Sedgwick is not in charge of Kroger or its people.

And lastly, as McKenney tries to link Sedgwick to the claimed slip and fall, the Court observes that the theory is not in the Complaint. The Complaint names Sedgwick and Spivey, the "Insurance Defendants," only for their handling of McKenney's claim, not for any contribution to the fall itself. As such, the Court rejects McKenney's theory pivot in the briefing.

### C. Summary Judgment as to Spivey

All of the previous merits analysis applies with equal or greater force to Spivey. Spivey—as an agent for an agent for a self-insured entity—is even further removed from bad-faith and UCSPA liability. Additionally, McKenney's negligence and gross negligence claims against Spivey were not adequately stated in the Complaint, and Spivey owes McKenney no duty to handle

---

[9] The other less important factors are similarly and surely unavailing. Kroger and its employees are not "engaged in a distinct occupation or business"; there is no unique "skill required" for working at Kroger; Sedgwick does not supply Kroger or its employees with "the instrumentalities, tools, and . . . place of work"; grocery store employees do not generally work "under the direction" of claims adjusters; and almost certainly, Sedgwick did not "believe [it was] creating the relationship of [principal] and [agent]" with Kroger and its employees, and vice versa. *Brooks*, 289 S.W.3d at 212 (quoting *Gregg*, 279 S.W.2d at 757).

16

his claim in any particular way, due to their lack of privity. For these reasons, summary judgment is proper with respect to all claims raised against Spivey in Count V of the Complaint.

However, as the parties separately note in their briefs, Spivey has not yet appeared in this matter. *See* DE 25 at 2 n.1; DE 29 at 3 n.2. While Sedgwick asserts that Spivey has not been served, *see* DE 25 at 2 n.1, McKenney claims that he "attempted service . . . by serving the Kentucky Secretary of State for service upon" Spivey, *see* DE 29 at 3 n.2. Under Kentucky law, that sometimes is an effective method of service. *See* KY. REV. STAT. ANN. § 454.210(3)(c); FED. R. CIV. P. 4(e)(1). Yet, there is utterly no proof of service by such method in the record, and the service window of Rule 4(m) expired long ago.

McKenney sued Spivey but has not brought her before the Court, even now some four months after the filing of DE 25. That said, Sedgwick plainly sought summary judgment on the entirety of Count V and sought to extend relief to its previous employee, Spivey. McKenney had notice and a full opportunity to respond on the merits. As such, given the legal analysis plainly foreclosing relief against Spivey, the Court will, in fact, grant summary judgment to Defendants on the entirety of Count V. McKenney fully litigated whether the Count would survive Rule 56; the Court adjudges the Count lacking, and the relief logically and necessarily extends to Spivey as well.[10]

### IV. CONCLUSION

Consistent with the above analysis, the Court ORDERS as follows:

1. The Court **GRANTS** DE 25;

2. The Court DISMISSES all claims contained in Count V of the Complaint, with prejudice.

Because this disposition leaves no claims pending against either party, the Court

---

[10] This equates procedurally to a Rule 56(f) result, given the fulsome notice to McKenney.

DISMISSES Defendant Sedgwick Claims Management Services, Inc. and Defendant Kewanza Spivey.  All claims against Kroger Limited Partnership I contained in Counts I–IV of the Complaint remain active.

This the 6th day of November, 2025.

Signed By:

*Robert E. Wier*

United States District Judge